**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**ANDREW UNDERWOOD,**

    Plaintiff,

v.

**CITY OF MOULTRIE, GEORGIA, AND MOULTRIE POLICE DEPARTMENT**,

    Defendants.

Civil Action No. 7:13-CV-13 (HL)

**ORDER**

Before the Court is the Motion for Partial Summary Judgment (Doc. 17) filed by Defendants City of Moultrie, Georgia ("City of Moultrie") and the Moultrie Police Department ("MPD" or "the Department"). For the reasons stated below, the motion is granted.

**I.    Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Local Rule 56, the facts listed in the movant's statement of material facts will be deemed admitted as undisputed unless the non-movant denies each specific fact and provides a supporting citation to the factual record. M.D. Ga. L.R. 56. However, even if the non-movant fails to offer adequate objections under Local Rule 56, a court may not accept at face value the movant's depiction of the facts. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101-02 (11th Cir. 2004). A court must review the record to determine for itself whether the motion for summary judgment is supported by the evidence and that there is no genuine issue of material fact. Id.; see also Reese v. Herbert, 527 F.3d 1253, 1268-69 (11th Cir. 2008).

**II.   Factual Background**

Plaintiff Andrew Underwood ("Plaintiff") has not responded with specific record citations to the statement of undisputed material facts provided by the City of Moultrie and the MPD (collectively "Defendants"). Therefore, where the Court has determined that the Defendants' statement of facts is supported by evidence, these facts are deemed admitted.

Plaintiff filed suit against Defendants after his forced resignation on June 21, 2012 from his job as a canine ("K-9") handler with the MPD. Plaintiff is a Caucasian male. First hired by the MPD in April 2006, Plaintiff became a K-9 handler in late 2008. During the entire time that Plaintiff worked in the MPD,

Frank Lang ("Chief Lang") was its chief of police. (Defendants' Statement of Undisputed Material Facts ("DSMF"), Doc. 18, ¶¶1-4, 76).

After becoming a K-9 handler, Plaintiff was required to train and care for his K-9. From about January 2009 until April of that year, Plaintiff's K-9 lived with a different police officer, and each day Plaintiff would have to drive to that officer's house to train the dog. After April 2009, however, Plaintiff's K-9 lived with him, and he spent some time each day training, exercising, feeding, and caring for it. (Deposition of Plaintiff, Doc. 23, pp. 186-203). In early 2012, Chief Lang attended a seminar and learned that the law might require the MPD to compensate K-9 handlers for the time they spent caring for their dogs. Thus, on February 9, 2012, the Department implemented a policy under which K-9 handlers were to devote one hour of every twelve-hour shift to caring for their dogs. (DSMF, ¶¶79-81).

Over the four years he was with the MPD, Plaintiff was disciplined by the Department on numerous occasions. The MPD has a range of possible disciplinary actions including written reprimands, counseling sessions, suspension, decision-making leave ("DML"), and termination. Plaintiff's operation of his police vehicle regularly ran afoul of departmental policies. In April 2007, he received written reprimands after leaving his patrol car while its engine was still running and its window was rolled down and then later for damaging his vehicle

when he backed it into the cement foundation for a light pole. He was also reprimanded in July 2007 for exiting his patrol car without first placing it in park. In April 2009, Plaintiff received a counseling session for driving his car through a red light. In June 2009, the Department disciplined Plaintiff with a counseling session after he neglected to inform dispatch of his location. On January 5, 2011, Plaintiff caused a motor vehicle accident by using his cell phone while driving, consequently receiving a two-day suspension without pay. In February 2012, he was given a counseling session after driving his vehicle 75 miles per hour in a 55 miles per hour zone. In June 2012, the Department conducted an internal affairs investigation after Plaintiff was unable to explain how the rear bumper of his police vehicle had become damaged. (Id. at ¶¶20, 23, 28, 32, 36, 44, 58, 65-66).

The way Plaintiff generally used departmental property also displeased his superiors. In April 2007, Plaintiff was given a counseling session after he accidentally shot himself with his police firearm while he was in his personal vehicle and off-duty. He had to receive a counseling session in June 2007 after losing a notebook with information required for incident reports, causing the reports to be filed late. In November 2007, Plaintiff left his shotgun on the steps leading to an MPD entrance and was reprimanded. Plaintiff lost a pager and a gas card in April 2011 and January 2012, respectively, for which he was reprimanded. (Id. at ¶¶15, 22, 25, 46, 56).

The MPD also disciplined Plaintiff on multiple occasions for the slip-shod manner in which he treated items of possible evidence of crimes. In December 2006, Plaintiff was given written counseling for losing a $100.00 counterfeit bill while leaving the police department. In November 2009, he received a written warning for failing to put documents into evidence. The MPD gave him a counseling session in June 2010 after he failed to immediately confiscate a firearm with an altered serial number that someone was attempting to pawn. On April 14, 2011, he received two disciplinary letters. Plaintiff first failed to use his voice recorder while speaking with a citizen and then later discovered a knife in his car's trunk. He did not know how the knife came to be there or whether it was evidence in a case. On June 18, 2012, the MPD conducted an internal affairs investigation after an individual whom Plaintiff had arrested claimed that the person's cell phone was not returned upon his release. The MPD's investigating officer determined that Plaintiff had lost the cell phone and recommended that he be fired. (Id. at ¶¶17, 40, 42, 48, 50, 67-69).

Plaintiff's tardiness and absences from mandatory events similarly concerned the MPD. In June 2007, he was reprimanded for failing to attend mandatory training. He was given counseling sessions in 2009 after not going to

two National Night Out meetings.[1] In June 2011, after being tardy to municipal court, Plaintiff received a counseling letter. (Id. at ¶¶27-28, 34, 38, 52).

The MPD disciplined Plaintiff for other incidents as well. In January 2009, Plaintiff arrested the wrong person in connection with an investigation and consequently received a warning letter. He was given a counseling letter in August 2011 for acting unprofessionally by speaking to a fellow officer in a loud tone while in the presence of someone who was not a police officer. Plaintiff's K-9 failed to obtain recertification in February 2012, and Plaintiff was disciplined with a counseling session. (Id. at ¶¶30, 54, 60).

The MPD eventually began disciplining Plaintiff more sternly. On February 10, 2012, Chief Lang placed Plaintiff on decision-making leave, or DML. With DML, an employee is suspended for a day with pay and instructed to decide whether he is committed to doing what is necessary to remain with the MPD. DML is the final step in the MPD's positive discipline process. Plaintiff chose to remain with the MPD. However, following the two internal affairs investigations in June 2012 relating to the lost cell phone and the unexplained damage to the bumper on Plaintiff's patrol car, the MPD informed Plaintiff that he could either

---

[1] National Night Out, culminating in a nationwide, annual event on the first Tuesday of each August, is an "effort to promote involvement in crime prevention activities, police-community partnerships, neighborhood camaraderie and send a message to criminals letting them know that neighborhoods are organized and fighting back." *NATW & National Night Out*, NATIONAL ASSOCIATION OF TOWN WATCH (July 22, 2014), http://natw.org/about/.

7

resign or be terminated. He resigned. (Id. at ¶¶4, 62-69; Plaintiff Depo., pp.162-64).

Other police officers with the MPD received similar treatment. Kizzie Richards ("Richards"), an African-American female, served with the MPD from October 2009 until November 2011. Over the course of that time, Richards was subject to eleven different disciplinary actions for, *inter alia*, causing a motor vehicle accident, neglecting her post, speeding, mishandling evidence, failing to use audio/visual equipment during a police response, failing to prepare an incident report, lying to a municipal court judge and a supervisor, and losing a police flashlight. In July 2011, she was placed on DML. On November 8, 2011, following an investigation into the circumstances of Richards' dismissal of a criminal case, she was told she could either resign or be fired. She resigned. (DSMF, ¶¶71-72, 76-78; Affidavit of Frank N. Lang, Sr., Doc. 20, ¶¶4-25).

The MPD also disciplined James Williams ("Williams"), an African-American police officer. From October 2010 until April 2011, Williams was subject to multiple disciplinary actions for, *inter alia*, tardiness, absence from court, causing a motor vehicle accident, and playing his music too loudly in his personal vehicle. Chief Lang placed Williams on DML on April 4, 2011, and, in June 2011, the officer resigned. (Id. at ¶¶26-36; DSMF, ¶¶74-75).

On February 8, 2013, Plaintiff sued Defendants in this Court. He alleges that Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Fair Labor Standards Act ("FLSA"). Plaintiff asserts that the Defendants violated Title VII by subjecting him to a hostile work environment, disciplining him more often than African-American police officers who had committed more significant policy violations, and retaliating against him for protesting the unfair discipline.[2] His FLSA claim is that he is entitled to reimbursement of expenses and back pay for his time in caring for his K-9 at home. (Complaint, Doc. 1, ¶¶5, 13, 24, 27; Brief in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment, Doc. 26-1).

## III.   Legal Analysis

Defendants' motion for partial summary judgment is granted because, based on the undisputed facts, they are entitled to judgment as a matter of law.

### A.   Claims against the Moultrie Police Department

All of the claims against the MPD are dismissed because, under Georgia law, it is not an entity capable of being sued. Smith v. City of Unadilla, 510 F. Supp. 2d 1335, 1342 (M.D. Ga. 2007) (citing Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) and Lovelace v. Dekalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005) for the conclusion that Georgia law does not recognize police

---

[2] Neither the Complaint nor Plaintiff's brief in opposition to summary judgment specifies how Defendants supposedly retaliated against him. They also fail to state how Plaintiff endured a hostile work environment.

departments as entities capable of being sued). Even had the MPD been capable of being sued, the claims would still be dismissed because Plaintiff did not contest summary judgment with regards to the MPD. *See* Resolution Trust v. Dunmar, 43 F.3d 587, 599 (11th Cir. 1995) (noting that "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned").

### B.  Claims under Title VII and 42 U.S.C. § 1981

The claims against the City of Moultrie pursuant to Title VII and § 1981 are also dismissed. Title VII and § 1981 claims "have the same requirements of proof and [are subject to] the same analytical framework…." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). As amended, Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race…." 42 U.S.C. § 2000-e2(a). Thus, to establish a Title VII claim of race discrimination a plaintiff must provide evidence that he was discriminated against on the basis of his race, regardless of whether the alleged discrimination took the form of disparate treatment or a hostile work environment. *See* Maynard v. Bd. of Regents, 342 F.3d 1281, 1288-90 (11th Cir. 2003) (disparate treatment); Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012) (hostile work environment). For a retaliation claim, a plaintiff must

produce some evidence that he opposed a practice made unlawful by Title VII. Dixon v. The Hallmark Cos., 627 F.3d 849, 856-57 (11th Cir. 2010). The plaintiff must subjectively believe that the employer was violating the law, and the belief must be objectively reasonable in light of the evidence. Id. at 857.

There is no evidence that Plaintiff ever experienced racial discrimination while he was with the MPD. During his deposition, when questioned by defense counsel as to whether specific disciplinary actions taken against him were based on racial discrimination, Plaintiff always acknowledged that they were not. He even conceded that the recommendation to fire him was not made because of his race and was in no way discriminatory. Furthermore, Richards and Williams, the two African-American officers whom Plaintiff speculated received more favorable treatment, were clearly subjected to comparable disciplinary measures.

Nor is there any evidence Plaintiff suffered retaliation for opposing a practice made unlawful by Title VII. Plaintiff has not pointed the Court to precisely how or when he opposed unlawful employment discrimination, how the evidence in this case supports that any subjective belief about the alleged discrimination was objectively reasonable, or how Defendants retaliated against him. If for no other reason, summary judgment would be granted on the retaliation claim because Plaintiff did not oppose dismissing it. The Title VII and § 1981 claims are dismissed as entirely unsupported by the record.

What surprises the Court is how Plaintiff could file such obviously frivolous claims and how, when once Defendants moved for summary judgment, his counsel with a straight face could oppose dismissing them. Plaintiff has forced the Court and Defendants to expend considerable time, expense, and effort in resolving these claims. In response to the summary judgment motion, plaintiff counsel filed a two and a half page statement of facts, exclusive of the signature line and certificate of service, and a two and a half page brief, also exclusive of the signature line and certificate of service. As previously noted, plaintiff counsel never responded to the Defendants' statement of undisputed material facts. It does not appear that plaintiff counsel deposed a single person in this lawsuit. If counsel persists in such conduct while practicing before this Court, he should expect to explain why his conduct should not subject him to sanctions under Federal Rule of Civil Procedure 11.

### C.   Claims under the FLSA

Defendants move the Court to dismiss Plaintiff's FLSA claims based on violations that might have occurred prior to February 8, 2011. They contend that the FLSA claims are subject to a two-year statute of limitations because there is no evidence that Defendants willfully violated the FLSA. There being no evidence of willful violations, and given Plaintiff's failure to oppose summary judgment on these claims, the motion is granted. See Allen v. Bd. of Public Educ. for Bibb

Cnty., 495 F.3d 1306, 1323-24 (11th Cir. 2007). Thus, Plaintiff's only remaining claims are for FLSA violations occurring subsequent to February 7, 2011.

## IV. Conclusion

In light of the foregoing, the Motion for Partial Summary Judgment (Doc. 17) by the City of Moultrie and the Moultrie Police Department is granted. All of the claims against the Moultrie Police Department are dismissed. All of the claims against the City of Moultrie are also dismissed except for any FLSA claims arising after February 7, 2011. This case will be set for trial.

**SO ORDERED**, this the 24th day of July, 2014.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr